**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**GWENDOLYN DUBOSE and HAROLD DUBOSE,**

        **Plaintiffs,**

**-vs-**                                             **Case No. 6:08-cv-385-Orl-31DAB**

**TRANSPORT ENTERPRISE LEASING, LLC, FLAWLESS TRANSPORTATION, INC., THOMAS A. COLLIER, JR., and ANTONIO FOSTER,**

        **Defendants.**
_____

# ORDER

This matter came before the Court without oral argument upon consideration of Defendant's, Transport Enterprise Leasing, LLC ("Transport"), Motion for Summary Judgment (Doc. 29), Plaintiffs', Gwendolyn Dubose and Harold Dubose ("Plaintiffs"), response in opposition thereto (Doc. 71), Transport's Reply to Plaintiffs' response in opposition to the Motion for Summary Judgment (Doc. 87), and Plaintiffs' Notice of Filing Additional Documentation (Doc. 95).

**I. Overview and Procedural History**

In their Second Amended Complaint, Plaintiffs allege that they were involved in a car accident on January 17, 2007 (Doc. 45, ¶ 17). Specifically, Plaintiffs allege that a tractor (the "Tractor") driven by Defendant Collier collided with Plaintiffs' vehicle in a rear-end collision near the intersection of US 441 and Michigan Street in Orlando, Florida (Doc. 45, ¶ 15). The Tractor

was owned by Defendant Transport (Doc. 45, ¶ 12). Transport, however, had leased the Tractor to Defendant Antonio Foster, d/b/a Flawless Transportation ("Foster" or "Flawless") pursuant to a three-year lease agreement (Doc. 45, ¶ 12).

Based on the foregoing allegations, Plaintiffs raised four substantive claims in their Second Amended Complaint. Count I asserts that Collier was negligent in operating and maintaining the Tractor. Count II asserts that Flawless was negligent in failing to maintain the minimum amounts of liability insurance, in failing to comply with various state and federal regulations, in operating a "lease-on"[1] operation, and in allowing an unqualified driver, Collier, to operate and maintain the Tractor. Court III asserts the same claim as Count II but is directed against Foster in his individual capacity. Count IV asserts that Transport was negligent in failing to ensure that its lessee, Flawless or Foster, carried the minimum amount of liability insurance, in leasing and delivering the Tractor to Foster when Transport knew or should have known that Foster was conducting a "lease-on" operation and using unqualified drivers.

Defendants Collier, Flawless, and Foster have failed to answer the complaint or otherwise appear in this case and have been defaulted (Docs. 64 and 70). Defendant Transport has moved for summary judgement contending, *inter alia*, that it is entitled to a judgment as a matter of law on Count IV inasmuch as it is immune to suit pursuant to 49 U.S.C. § 30106 (the "Graves Amendment" or "§ 30106").

---

[1]According to Plaintiffs, a "lease-on" operation involves the scheduling of shipments carried by tractors which the operation does not own or lease and which are driven by independent drivers or employees of other trucking companies whom the operation does not ensure are qualified to drive (Doc. 45 at ¶ 21).

The parties agree that Florida substantive law is applicable to Count IV of the Second Amended Complaint.² The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## II. Factual Background

Transport is in the business of the leasing tractors, trailers and other trucking equipment. On or about January 18, 2006, Transport entered into an eleven-page Commercial Vehicle Lease Agreement with Foster³ (Doc. 29 at 27 and 30-40). Pursuant to the Commercial Vehicle Lease Agreement, Transport agreed to lease the Tractor, a 2004 Freightliner, to Foster for a period of thirty-six (36) months (Doc. 29 at 30). The Commercial Vehicle Lease Agreement specifically provided that:

VI. Repair and Maintenance

    A. Lessee, at its expense, shall keep and maintain the [Tractor] in good operating condition and working order, and shall make all necessary repairs and replacements to such [Tractor]...

IX. Insurance

    A. Lessee shall procure and maintain insurance covering the [Tractor] throughout the [term of the lease] with insurance companies satisfactory to

---

²On December 15, 2008, the Court ordered the parties to either stipulate as to the state law applicable to this case or, in the alternative, file supplemental briefs directed to the choice of law analysis (Doc. 89). With the exception of the Graves Amendment and certain other federal statutes and regulations, the parties agree that Florida substantive law applies to Count IV of the Second Amended Complaint. Although Plaintiffs also contend that Georgia's financial responsibility and insurance laws should apply (in addition to Florida law), for the reasons discussed, *infra*, the Court need not reach that question.

³Although the original lease was between Transport and Foster, Transport sent a letter to Foster on February 7, 2007, clarifying that the lease was between Transport and "Antonio Foster D/B/A Flawless Transportation" (Doc. 29 at 41). Transport and Foster executed this clarifying addendum on February 8, 2007 (Doc. 29 at 41).

>   the Lessor. Policies are to include the interest of both Lessor and Lessee
>   and will provide limits of:
>
>       1. _____ per person for bodily injury.
>       2. _____ per accident for bodily injury.
>       3. _____ property damage.
>       4. _____ deductible collision (Option #1).
>       5. _____ deductible Fire & Theft...
>
>   C. Lessor, Lessee, their employees and/or their agents shall comply with all
>   terms and conditions of insurance policies covering the [Tractor].

(Doc. 29 at 38). Written diagonally across lines one through five in foregoing insurance provisions were the words "State Limits" or "Stated Limits" (Doc. 29 at 38 and Doc. 66-5 at 31).

At the time Transport actually entrusted the Tractor to Foster,[4] Transport was provided with a U.S. Department of Transportation Common Carrier Certificate authorizing Flawless Transportation, Inc. d/b/a FTI to haul freight, and a Certificate of Liability Insurance stating combined single limit coverage for Flawless Transportation, Inc. d/b/a FTI in the amount of $1,000,000.00 (Doc. 29 at 28-34). Transport, however, did not inquire why these certificates were in the name of Flawless Transportation, Inc. d/b/a FTI and not in the name of Foster or Antonio Foster D/B/A Flawless Transportation.[5] Transport did not verify that the Tractor it was leasing to Foster was actually listed as a vehicle under the schedule of insured vehicles covered by the

---

[4]In the absence of any other evidence presented by the parties, the Court has assumed that the entrustment occurred on the same day that the lease was executed (i.e., January 18, 2006).

[5]According to Transport, because Foster had signed the lease as "Owner," it simply assumed that Foster and Flawless Transportation, Inc. d/b/a FTI or "Antonio Foster D/B/A Flawless Transportation" were all one and the same (Docs. 66-5 at 35).

certificate of insurance or whether the certificate was even valid (Doc. 66-5 at 33-34).[6]

Transport's Director of Leasing, Fred Rhodes, testified that while Transport requires proof of $1,000,000.00 in liability coverage before it will turn over a tractor or other equipment to a prospective lessee, Transport does not take any specific steps to verify that the insurance coverage actually exists[7] – it simply makes a copy of the proof of insurance for its records and follows-up with its lessees and the insurers as the expiration date on the proof of insurance draws near (Doc. 66-5 at 33). Nor does Transport check on driver qualifications – it simply relies on the terms of its lease agreement which require the lessee to use qualified drivers (Doc. 66-6 at 17).

Sometime after Transport leased the Tractor to Foster, Foster permitted Collier to operate the Tractor. On January 17, 2007, less than one year into the Commercial Vehicle Lease Agreement, Collier rear-ended the Plaintiffs' vehicle while driving the Tractor in Orlando, Florida (Doc. 81-2 at 1). As a consequence, Plaintiffs were injured (Doc. 81-2 at 1). Other than some limited cargo insurance, there was no insurance coverage in effect on the Tractor at the time of the

---

[6]As Transport notes, however, the public records of the U.S. Federal Motor Carrier Safety Administration (the "FMCSA") confirm that Flawless Transportation, Inc. d/b/a FTI had $1,000,000.00 of insurance coverage in place at the time that Transport entrusted the Tractor to Foster (Doc. 87 at 6). Importantly, though, the FMCSA's records do not indicate whether the Tractor was actually insured by Foster at the time he received it from Transport. Neither Transport nor Plaintiffs have provided any evidence to the Court indicating whether Foster had insurance on the Tractor at the time he received it from Transport.

[7]Transport's Managing Partner, Paul D. Carmichael, testified that it is not uncommon for leasing companies such as his to only require a certificate of insurance and not a specific schedule of tractors that are covered by the certificate of insurance (Doc. 66-6 at 4-5). Because trucking companies frequently alter their fleets based on monthly gross receipts, they generally "add and delete vehicles [on the schedule] at the end of the month. And [insurers] cover whatever you pick up and whatever you drop off. So it's not uncommon to accept a certificate of insurance and say [sic] any scheduled auto and not make them produce that specific auto" (Doc. 66-6 at 5).

accident (Doc. 66-4 at 1). The Florida Traffic Crash Report indicates that Collier was cited for careless driving in violation of FLA. STAT. § 316.1925, that Plaintiffs' vehicle was stopped on US 441 preparing to turn left onto Michigan Street, and that Collier failed to stop, colliding with the rear of Plaintiff's vehicle (Doc. 88-2 at 1-4). Notwithstanding that fact that Transport had no obligation to maintain the Tractor, Plaintiffs have adduced no evidence indicating that the Tractor was not properly maintained or not functioning properly at the time of the accident.

### III. Standard of Review

A party is entitled to summary judgment when it can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324-25; *Watson*, 252 F.Supp.2d at 1352. The party opposing a motion for summary judgment must rely on

more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

## IV. Analysis

Transport contends that it is immune to suit pursuant to the Graves Amendment, which generally exempts the owner of a leased motor vehicle from liability for harm to persons or property arising out of the operation of the vehicle by a lessee. 49 U.S.C. § 30106(a). Plaintiffs do not challenge the general applicability of the Graves Amendment and concede that any claim predicated on a theory of vicarious liability or Florida's dangerous instrumentality doctrine would be preempted by the Graves Amendment (Doc. 71 at 1, 3-4). Instead, Plaintiffs argue that the Grave's Amendment does not preempt their negligence claim because the savings clause in § 30106(a)(2) permits Plaintiffs to assert that Transport was itself negligent in leasing the Tractor to Foster.[8]

---

[8] Plaintiffs also invite the Court to re-consider its decision in *St. Paul Fire and Marine Ins. Co. v. Lee*, Case. No. 07-CV-756, 2008 WL 1897602 (M.D. Fla. April 28, 2008), which held that the Florida's financial responsibility law governing long-term leases, FLA. STAT. § 324.021(9)(b)(1), was not compulsory and was therefore preempted by the Graves Amendment (Doc. 71 at 7). Similarly, Plaintiffs contend that Georgia's financial responsibility law, GA. CODE ANN. § 33-34-4, is not preempted by the Graves Amendment. While no Court appears to have squarely addressed whether GA. CODE ANN. § 33-34-4 is compulsory in light of the Graves Amendment, even in the context of short-term leases, Georgia's financial responsibility regime does not require lessors to provide insurance if the lessee already has insurance. *See*, *e.g.*, *Ryan v. Boyd*, 911 F.Supp. 524, 527 (M.D. Ga. 1996) (citing *Atlanta Rent-A-Car, Inc. v. Jackson*, 419 S.E.2d 489 (Ga. Ct. App. 1992)). Furthermore, based on the clear and unambiguous definitions included in GA. CODE ANN. § 33-34-2, it is the long-term lessee – not the lessor – who is the "Owner" that is required to maintain the insurance minimums putatively mandated by GA. CODE ANN. § 33-34-4. Accordingly, the Court concludes that the savings clause in § 30106(b) of the Graves Amendment is inapplicable to the instant case under both Florida and Georgia's financial responsibility laws.

In pertinent part, the Graves Amendment provides:

> (a) In general – An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if –
>
>> (1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
>>
>> (2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).
>
> (b) Financial responsibility laws – Nothing in this section supercedes the law of any State or political subdivision thereof –
>
>> (1) imposing financial responsibility or insurance standards on the owner of a motor vehicle for the privilege of registering and operating a motor vehicle; or
>>
>> (2) imposing liability on business entities engaged in the trade or business of renting or leasing motor vehicles for failure to meet the financial responsibility or liability insurance requirements under State law...

49 U.S.C. § 30106.

While numerous courts have passed on the constitutionality and general applicability of the Graves Amendment,[9] only a handful have considered the applicability of the savings clause in §

---

[9] *See*, *e.g.*, *Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242 (11th Cir. 2008)(upholding the constitutionality of the Graves Amendment under the Commerce Clause and concluding that while States may subject owners to legal judgments for failure to maintain insurance on their vehicles, they cannot impose such judgments against rental car companies based on the negligence of their lessees); *Dupuis v. Vanguard Car Rental USA, Inc.*, 510 F.Supp.2d 980 (M.D. Fla. 2007)(finding, *inter alia*, that Graves Amendment preempted Florida's dangerous instrumentality doctrine), *Johnson v. Agant*, 480 F.Supp.2d 1, 5 (D.D.C. 2006)(holding that Graves Amendment preempts vicarious liability claims against lessors under the law of any State); *see also Liberty Mut. Ins. Co. v. TCF Equipment Finance., Inc.*, Case. No. 06-CV-1567, 2007 WL 4557204 (M.D. Fla.

30106(a)(2). *See Berkan v. Penske Truck Leasing Canada, Inc.*, 535 F.Supp.2d 341 (W.D. N.Y. 2008) (granting lessor's motion for summary judgment where plaintiffs failed to adduce any evidence of lessor's negligence, including lessor's failure to maintain brakes on 2003 Freightliner tractor-trailer); *Vedder v. Cox et al.*, 859 N.Y.S.2d 900 (N.Y. Sup. Ct. 2008) (granting defendant-lessor's motion to dismiss where, *inter alia*, plaintiff failed to supply any legal authority imposing a legal duty on lessors to investigate lessees' driving records); *Novovic v. Greyhound Lines, Inc.*, No. CV-08-390, 2008 WL 5000228 (E.D. N.Y. Nov. 19, 2008)(relying on *Colon v. Bernabe*, *infra*, and concluding that plaintiff could assert claim for negligent maintenance against bus leasing company where leasing company agreed to maintain bus in lease agreement); *Colon v. Bernabe*, No. 07-CV-3369, 2007 WL 2068093 (S.D. N.Y. July 19, 2007) (conducting cursory examination of Grave's Amendment legislative history and concluding that, where lease agreement requires a lessor to maintain vehicle, § 30106(a)(2) permits a plaintiff to assert a negligence claim against the lessor for failure to maintain vehicle, but also expressing concern that "plaintiffs can defeat the spirit of § 30106" on a motion to dismiss by merely alleging that the leasing company was negligent in maintaining the vehicle); *Escaleria v. Powell*, No. CV065004566S, 2007 WL 4210982 (Conn. Super. Ct. Nov. 6, 2007) (granting motion to strike plaintiff's negligence claim against defendant-lessor where State law did not require lessor to ensure that lessee maintained insurance coverage and where defendant-lessor's failure to ensure that lessee maintained adequate

---

2007); *Seymour v. Penske Truck Leasing Co., L.P.*, Case. No. 407-CV-015, 2007 WL 2212609 (S.D. Ga. 2007); *see generally* Beth B. Holliday, Annotation, *Validity, Construction, and Application of Graves Amendment*, 29 A.L.R. FED. 2D 223 (2008)(discussing legislative history and collecting cases).

insurance was not, as a matter of law, a proximate cause of plaintiff's injury).[10] Absent some evidence of a lessor's failure to properly maintain a vehicle which it has expressly agreed to maintain pursuant to a lease agreement, or some similar active negligence on the part of the lessor, the conclusion reached by these courts is that § 30106(a)(2) is rarely applicable and should be cautiously applied in light of Congress' clear intent to forestall suits against vehicle leasing companies. *Id*. Indeed, unless a State specifically imposes a legal duty on lessors to ensure that their lessees maintain adequate insurance or to ensure that their lessees have adequate driving records, § 30106(a)(2) only appears to apply to claims predicated on criminal wrongdoing and negligent maintenance claims – not claims of negligent entrustment. *Id*. This Court concurs in the foregoing precedents and proceeds under a similar analytical framework.

In the case at bar, it is undisputed that the lease agreement required the lessee, Foster, to maintain the Tractor and to ensure that there was adequate insurance in effect. Even assuming, then, that Plaintiffs had offered some evidence that the Tractor was not properly maintained, Plaintiffs cannot assert a negligence claim against Transport for failure to maintain the Tractor. With respect to insurance coverage, Plaintiffs have failed to provide the Court with any legal authority which would require a lessor to maintain insurance on a leased vehicle. Nor have Plaintiffs offered any authority which would impose a legal duty on a long-term lessor to ensure that its lessee maintained adequate insurance on a leased vehicle. Similarly, Plaintiffs have failed to provide the Court with any legal authority which would require a long-term lessor to investigate a potential lessee's driving record, or on the facts of this case, the lessee's trucking operation,

---

[10]The parties failed to cite any of these non-binding, but persuasive decisions to the Court.

before entrusting a vehicle to a lessee. On the contrary, there is no duty to investigate or determine an individual's competency to operate an automobile before making a sale or entering into a lease. *See*, *e.g.*, *Boutilier v. Chrysler Ins. Co.*, No. 8:99-CV2270T26, 2001 WL 220159 (M.D. Fla. Jan. 31, 2001)(citing *Horne v. Vic Potamkin Chevrolet, Inc.*, 533 So. 2d 261 (Fla. 1988)). Although Transport had Foster's valid U.S. Department of Transportation Common Carrier Certificate at the time of the entrustment and therefore had no reason to question his competency, Transport was under no duty to even request the certificate or investigate Foster's driving record or trucking operation before entrusting the Tractor to Foster.

In short, Plaintiffs ignore the ownership interest inherent in a long-term lease and the clear intent of the Graves Amendment. Absent a reservation of some indicia of ownership in the lease agreement (e.g., the lessor agrees to maintain the vehicle), once a lessee takes possession of the vehicle, the lessor relinquishes its ownership interest. At that point, any duty owed by the lessor to the public at large ceases to exist. It is the duty of the lessee, as the "owner," to properly maintain the vehicle and comply with applicable State and federal financial responsibility laws. Thus, where the lessor does not reserve any indicia of ownership in the lease, the negligence savings clause in § 30106(a)(2) is clearly inapplicable. To hold otherwise would render the entire statute illusory.

Accordingly, the Court concludes that Transport is entitled to a judgment as a matter of law on Plaintiffs' negligence claim. Inasmuch as Plaintiffs have failed to reveal any issue of disputed material fact concerning the applicability of the Graves Amendment, the Court finds that Transport is immune to suit pursuant to 49 U.S.C. § 30106.

## V. Conclusion

Based on the foregoing, it is **ORDERED** that Defendant's, Transport Enterprise Leasing, LLC, Motion for Summary Judgment (Doc. 29) is **GRANTED**. It is **FURTHER ORDERED** that Plaintiffs', Gwendolyn Dubose and Harold Dubose, Motion for Partial Summary Judgment on Defendant's Affirmative Defenses (Doc. 82), and Defendant's, Transport Enterprise Leasing, LLC, Motion for Physical Examination (Doc. 110), are **DENIED** as **MOOT**.

The Clerk of the Court is directed to enter judgment in favor of Defendant, Transport Enterprise Leasing, LLC, on Count IV in the Second Amended Complaint.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 27, 2009.

Copies furnished to:

Counsel of Record
Unrepresented Party

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE